Adam E. Hauf
The Law Office of Adam Hauf
4225 W Glendale, Ste A104
Phoenix, Arizona 85051
P: 623.252.0742 F: 623.321.2310
admin@hauflaw.com
Attorney for Debtor

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re: | Chapter 11 Proceedings |
| **VIVIAN HALE STARR,** | Case No.: 2:14-bk-18525-EPB |
| Debtor. | |

DISCLOSURE STATEMENT

OF

VIVIAN HALE STARR

Dated: August 13, 2015

Filed by: The Debtor,

**VIVIAN HALE STARR**

1

# ARTICLE I
## INTRODUCTION
### A. <u>GENERAL INFORMATION</u>

      VIVIAN HALE STARR ("Starr" or "Debtor") hereinafter referred to as the Debtor, provides this Disclosure Statement ("Disclosure Statement") pursuant to 11 U.S.C. Section 1125 to all of her known Creditors and parties-in-interest in order to disclose that information deemed by the Debtor to be material, important and necessary for her creditors and parties-in-interest to arrive at a reasonable, informed decision in exercising their right to vote for acceptance of the Debtor's Plan of Reorganization (hereinafter referred to as the "Plan"), dated August 13, 2015 and presently on file with the United States Bankruptcy Court for the District of Arizona ("Court") and attached hereto as Exhibit "A".

      The Court determined that this Disclosure Statement contains information of a kind and in sufficient detail for holders of claims and interests to make an informed judgment concerning the Plan. The Court further determined that this Disclosure Statement may be used in connection with the solicitation of acceptances of the Plan.

      A copy of the Debtor's Plan and a ballot for voting accompanies this Disclosure Statement. The definitions found in Article I of the Plan are incorporated herein by reference and should be referred to in reading and analyzing the Plan and Disclosure Statement.

      Unless otherwise noted, this Disclosure Statement was prepared from information provided by the Debtor. The Debtor has utilized all information available to her in preparing this Disclosure Statement and the Plan. She has utilized her best efforts in preparing and submitting this information for your consideration. You are urged to carefully read the contents of this Disclosure Statement before making your decision to accept or reject the Plan. This Disclosure Statement and the Plan Classifies all creditors into classes. The specific treatment of each class of creditors will be set forth in this Disclosure Statement and the Plan. You should carefully examine the treatment of the class or classes to which your claim will be assigned.

This Disclosure Statement contains information that may influence your decision to accept or reject the Debtor's proposed Plan of Reorganization. Please read this document with care. The only representations that are authorized by the Debtor concerning the value of the Debtor's assets are the representations contained in this Disclosure Statement. The financial information contained in this Disclosure Statement has not been subject to an audit by an independent certified public accountant. For that reason, as well as the complexity of the Debtor's financial affairs, the Debtor is not able to warrant or represent that the information contained in this Disclosure Statement is without any inaccuracy. To the extent practicable, the information has been prepared from the Debtor's financial books and records and great effort has been made to ensure that all such information is fairly representative.

**The Court has not verified the accuracy of the information contained herein, and the Court's approval of this Disclosure Statement does not imply that the Court endorses or approves the Plan. Rather, the approval of this Disclosure Statement by the Court indicates that if the information contained herein is accurate, it is sufficient to provide an adequate basis for creditors and parties-in-interest to make an informed decision with respect to voting on the plan.**

### B. <u>REPRESENTATIONS</u>

Certain materials contained in this Disclosure Statement are taken directly from other, readily accessible instruments or are digests of other instruments. While every effort has been made to retain the meaning of such instruments, you are urged to rely upon the contents of such instruments only, and only upon a thorough review of the instruments themselves.

**NO REPRESENTATIONS OR ASSURANCES CONCERNING THE DEBTOR INCLUDING, WITHOUT LIMITATION, THE VALUE OF PROPERTY, ARE AUTHORIZED BY THE DEBTOR, OTHER THAN AS SET FORTH IN THIS DISCLOSURE STATEMENT. ANY REPRESENTATIONS OR INDUCEMENTS MADE TO SECURE YOUR ACCEPTANCE WHICH ARE OTHER THAN THOSE CONTAINED IN THIS DISCLOSURE STATEMENT SHOULD NOT BE RELIED**

Case 2:14-bk-18525-EPB    Doc 36    Filed 08/13/15    Entered 08/13/15 20:19:34    Desc
Main Document    Page 3 of 50

UPON BY YOU IN ARRIVING AT YOUR DECISION, AND SUCH ADDITIONAL REPRESENTATIONS OR INDUCEMENTS SHOULD BE REPORTED TO COUNSEL FOR THE DEBTOR, WHO IN TURN, SHALL DELIVER SUCH INFORMATION TO THE COURT FOR SUCH ACTION AS MAY BE APPROPRIATE.

THIS IS A SOLICITATION BY THE DEBTOR ONLY AND IS NOT A SOLICITATION BY THE DEBTOR'S ATTORNEYS OR ACCOUNTANTS, AND THE REPRESENTATIONS MADE HEREIN ARE THOSE OF THE DEBTOR AND NOT OF THE DEBTOR'S ATTORNEYS OR ACCOUNTANTS, EXCEPT AS OTHERWISE INDICATED. REASONABLE EFFORTS HAVE BEEN MADE TO PREPARE ALL UNAUDITED FINANCIAL INFORMATION WHICH MAY BE CONTAINED IN THIS DISCLOSURE STATEMENT IN ACCORDANCE WITH GENERALLY ACCEPTED ACCOUNTING PRINCIPALS; HOWEVER, AS TO ALL FINANCIAL INFORMATION, THE DEBTOR IS UNABLE TO WARRANT OR REPRESENT THE ACCURACY OF THE INFORMATION CONTAINED THEREIN TO BE WITHOUT ERROR.

THE LIQUIDATION ANALYSIS CONTAINED HEREIN HAS NOT BEEN SUBJECT TO AN AUDIT OR EXAMINATION BY INDEPENDENT CERTIFIED PUBLIC ACCOUNTANTS. RECORDS SUBSEQUENT TO THE FILING OF THE PETITION FOR REORGANIZATION HAVE BEEN KEPT BY THE DEBTOR AND MONTHLY FINANCIAL REPORTS HAVE BEEN SUBMITTED BY THE DEBTOR TO THE COURT SINCE THE FILING OF THE PETITION.

THE STATEMENTS CONTAINED HEREIN ARE MADE AS OF THE DATE HEREOF UNLESS ANOTHER TIME IS SPECIFIED HEREIN. NEITHER DELIVERY OF THIS DISCLOSURE STATEMENT NOR ANY EXCHANGE OF RIGHTS MADE IN CONNECTION WITH THE PLAN SHALL UNDER ANY CIRCUMSTANCES CREATE AN IMPLICATION THAT THERE HAS BEEN NO CHANGE IN THE INFORMATION SET FORTH HEREIN SINCE THE DATE OF THE DISCLOSURE STATEMENT AND THE MATERIAL RELIED UPON IN PREPARATION OF THIS DISCLOSURE STATEMENT WERE COMPILED.

**DEBTOR ASSUMES NO DUTY TO UPDATE OR SUPPLEMENT THE DISCLOSURES CONTAINED HEREIN AND DOES NOT INTEND TO UPDATE OR SUPPLEMENT THE DISCLOSURES.**

### C. FILING OF REORGANIZATION CASE

On December 18, 2014, the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

### D. VOTING

1. <u>Time and Manner of Voting</u>. All creditors or parties-in-interest entitled to vote on the plan may cast their votes for or against the Plan by completing, dating, signing, and mailing the original ballot to the attorneys for the Debtor. The Court has issued its Order requiring that all votes for the acceptance or rejection of the Plan be received by _____p.m. on _____, 2015. The ballots should be sent as follows:

Adam E. Hauf, Esq.,<br>
HAUF LAW PLC<br>
4225 W. Glendale Ave., Suite A104<br>
Phoenix, AZ  85051

2. <u>Return of Ballot</u>. Mail or deliver your ballot so that it will reach the attorneys for the Debtor before the deadline. A vote received by the attorneys for the Debtor after the deadline may not be counted.

3. <u>Parties Bound</u>. Whether a creditor votes on the Plan or not, such creditor will be bound by the terms and treatment set forth in the Plan, if the Plan is accepted by the requisite majorities of classes of creditors and/or is confirmed by the Court.

4. <u>Ballots</u>. Each creditor and party-in-interest is urged to fill in, date, sign and promptly mail the enclosed ballots. Be sure to properly complete the form and legibly identify the name of the claimant.

5.    Multiple Claims.  If you have a claim in more than one class, you may receive separate ballots for each claim.

6.    Voting and Impairment.  The Plan and Disclosure Statement identifies Debtor's judgment as to whether each Class of Claims or Interests is "Impaired" under the Code, but the Court ultimately determines whether a Class is Impaired.  The Code provides that Claims or Interests in a Class that is not Impaired shall be conclusively presumed to accept the Plan, accordingly, if you disagree with Debtor's judgment that your Class is not Impaired, you should submit a Ballot and seek a determination by the Court of your right to vote on the Plan.

PLEASE VOTE AND RETURN EACH OF THE BALLOTS YOU RECEIVE. SINCE MAIL DELAYS MAY OCCUR, IT IS IMPORTANT THE BALLOT OR BALLOTS BE MAILED OR DELIVERED WELL IN ADVANCE OF THE DATE SPECIFIED.  ANY BALLOT RECEIVED AFTER _____ MAY NOT BE INCLUDED IN ANY CALCULATION TO DETERMINE WHETHER THE DEBTOR'S CREDITORS AND INTEREST HOLDERS HAVE VOTED TO ACCEPT OR REJECT THE PLAN.

## E. CONFIRMATION OF THE PLAN

1.    Solicitation of Votes.  This Disclosure Statement has been approved by the Court in accordance with 11 U.S.C. Section 1125 and is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor. This Disclosure Statement is intended to assist creditors in evaluating the Plan and in determining whether to accept the Plan.  Under the Bankruptcy Code, your vote for acceptance or rejection may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.  The solicitation of votes on the Plan is governed by the provisions of 11 U.S.C. Section 1125(b), the violation of which may result in sanctions by the Court, including disallowance of the solicited vote.

2.    Persons Entitled to Vote on the Plan.  A creditor, in order to vote on the Plan, must have either filed a Proof of Claim with the Court or been scheduled by the Debtor as not being disputed, contingent or unliquidated.  Any creditor scheduled as not being

6

disputed, contingent, or unliquidated is, to the amount listed in the schedules, deemed to have filed a Proof of Claim, and, absent an objection to the claim, such claim is deemed allowed. However, only the votes of claimants that are Impaired under the Plan are counted in connection with confirmation of the Plan. Pursuant to the provisions of 11 U.S.C. Section 1124, a claimant is deemed to be Impaired under the Plan unless the legal and contractual rights of the claimants are left unaltered.

3. <u>Hearing on Confirmation of the Plan</u>. The Court will hold a hearing to determine whether or not the Plan should be confirmed on _____, 2015 at __:___ _.m at the United States Bankruptcy Court, 230 N. 1st Avenue, Phoenix, Arizona, Courtroom 703. You may attend that hearing and present to the Court your arguments in favor of or in opposition to the confirmation of the Plan.

4. <u>Acceptances Necessary to Confirm Plan</u>. At the scheduled confirmation hearing, the Bankruptcy Court must determine, among other things, whether the Plan has been accepted by each "impaired" class (e.g., a claim that will not be paid in full or payment other than as contracted upon final confirmation or an interest that is adversely affected, is considered impaired). Under 11 U.S.C. Section 1126, an Impaired class is deemed to have accepted the Plan if at least two thirds in amount and more than one half in numbers of claims of class members who have voted to accept or reject the Plan have voted for acceptance of the Plan. A class of interest holders is deemed to have accepted the Plan if two thirds of the amount of the allowed interests are voted in favor of the Plan.

5. <u>Confirmation of Plan Without Necessary Acceptances – Cramdown</u>. The Plan may be confirmed if it is not accepted by all of the impaired classes, if the Court finds that the Plan does not discriminate unfairly against, and is fair and equitable to, such non-accepting class or classes. This provision is set forth in 11 U.S.C. Section 1129(b), The Debtor hereby chooses to rely upon this provision to seek confirmation of the Plan if it is not accepted by all impaired classes of creditors.

## ARTICLE II
## BRIEF SUMMARY OF THE PLAN

The Debtor resides in Maricopa County, Arizona and is retired and receives Social Security benefits. The Debtor owns 5 parcel of real property, two of which are used as Debtor's personal residence (collectively the "Properties").

The Classification of Debtor's Creditors is set forth in Article IV of this Disclosure Statement and the specific treatment of Creditor Claims is set forth in Article V of this Disclosure Statement.

Generally, the Plan provides as follows:

Administrative claims and other priority claimants will be paid one hundred (100%) percent of their Allowed Claims which includes payment of unpaid taxes, if any, in accordance with the provisions of the Code or in such other manner as such claimants may otherwise agree.

Real Property Secured Claimants will receive 100% of their Allowed Secured Claim.

General Unsecured Creditors shall receive an amount equal to an amount greater than they would have received if Debtor had filed for relief under Chapter 7 of the Code and a sum greater than provided in 11 USC §1129(b)(2) upon the sale of real property as provided for under the provisions of the Plan.

Debtor as the Interest holder will, pursuant to §1129(a)(15) and (b)(2)(B)(ii) of the Code, retain her interest in all estate property in consideration of her funding of Allowed Claims and shall receive all exempt property.

THE FOREGOING DISCUSSION IS ONLY A BRIEF SUMMARY OF THE PLAN AND ALL PARTIES SHOULD REVIEW THE FULL TEXT OF THE PLAN.

## ARTICLE III
## HISTORY AND ORGANIZATION OF THE DEBTOR

1. <u>History of the Debtor</u>

The Debtor is a retired individual who receives Social Security as her major source of income although a portion of the income consists of the royalties she receives from various

publications. Debtor prior to her retirement operated a business titled Starr & Associates, Inc. d/b/a Starr Litigation Services, whose purpose was to aid and assist attorneys with regard to jury selection. The business is no longer in operation. In addition Debtor authored three books, "Jury Selection", "Witness Preparation" and "Voir Dire" which were published by Walters Kluer Law and Business. Debtor invested her earnings in real property and was adversely affected by the economic downturn. Although the real property has been regaining some of its value, Debtor found it was not economically feasible to liquidate the Properties and therefore she was unable to stay current with her regular payments to secured creditors.

2. Events leading to the Chapter 11 Filing.

The Debtor successfully operated her business described above for several years. After retiring and closing down the business, the Debtor experienced a downturn in the value of her real property which she had intended to use to provide for her retirement. Based upon the loss in value of her Properties Debtor was unable to continue to meet her payment obligations to secured creditors and in order to avoid foreclosures determined it was in her best interest and the best interest of her creditors to seek relief under the provisions of Chapter 11 of the Code.

3. Events Subsequent to Filing this Case.

A - VOLUNTARY PETITION: On December 18, 2014 the Debtor filed her petition for relief pursuant to Chapter 11 of the United States Bankruptcy Code (the "Code").

B. APPOINTMENT OF COUNSEL On August 13, 2015 Adam E. Hauf of Hauf Law, PLC ("Hauf") filed an Application for Appointment together with a Disclosure of Compensation under Rule 2016, a Verified Statement of Professional under Rule 2014, and a Proposed Order for Appointment. On _____, the Court approved the appointment of Hauf as counsel for Starr as Debtor and Debtor-in-Possession.

C. APPEARANCE OF U.S. TRUSTEE On December 19, 2014 a Notice of Appearance was filed by Larry L. Watson of the Office of The United States Trustee ("U.S. Trustee") on behalf of the U. S. Trustee.

D. TIFFANY & BOSCO APPEARANCE A Notice of Appearance was filed on January 7, 2015 by Leonard McDonald Jr., Esq. of Tiffany & Bosco on behalf of JP Morgan Chase Bank, N.A. ("Chase").

E. <u>MCCARTHEY, HOLTHUS APPEARANCE</u>  A Notice of Appearance was filed on January 30, 2015 by Michael W. Chen of McCarthy, Holthus, LLP on behalf of Ocwen Loan Servicing, LLC ("Ocwen").

F. <u>FILING SCHEDULES AND STATEMENT OF FINANCIAL AFFAIRS</u>
Debtor filed her Schedules and her Statement of Financial Affairs ("SOFA") on January 2, 2015, by and through her counsel, Hauf.

G. <u>FIRST MEETING OF CREDITORS</u>  The First Meeting of Creditors was held and concluded on the 29th day of January, 2015 before Larry L. Watson of the Office of the U.S. Trustee.  This was a meeting continued from January 20, 2015.

H. <u>STATUS HEARING</u>  A Status Hearing as provided in the Notice entered by the Court on January 13, 2015 was held before the Honorable Judge Eddward P. Ballinger, Jr. on February 3, 2015 in Courtroom 703 of the Federal Building located at 230 North 1st Avenue, Phoenix, AZ.  The hearing was continued to April 7, 2015 and subsequently continued to May 5, 2015 and June 30, 2015.  At the hearing on June 30th the Court ordered the filing of the Disclosure Statement and Plan of Reorganization and continued the Status Hearing to September 9, 2015.

I. <u>CREDITORS' COMMITTEE</u>  On January 20, 2015 the United States Trustee filed its Statement concerning the inability to appoint a Committee of Unsecured Creditors.

J. <u>PLAN AND DISCLOSURE STATEMENT</u>:  Debtor filed her Plan of Reorganization and Disclosure Statement on August 13, 2015 and a hearing on such Disclosure Statement was scheduled for the __ day of _____, 2015 at __:___ _.m.

## ARTICLE IV
## CLASSIFICATION OF CLAIMS AND INTERESTS

The Plan provides for the separate classification of all claims against and interests as follows.

1.  Priority Claims

Section 507 of the Bankruptcy Code identifies certain types of Claims entitled to payment with priority over all other unsecured claims.  Certain of the priority claims must be paid in full on the Effective Date of the Plan, pursuant to section 1129(a)(9)(A) and (B) of

the Bankruptcy Code, or consent to an alternative payment schedule, in order for a plan to be confirmed. Certain priorities provided for in Section 507 to wit 507(a)(1), (3), (4), (5), (6), (7), (9) and (10) are not applicable to Debtor. In the event it should determine any of those priorities are owed by Debtor they shall be paid on the Effective Date of the Plan, or as agreed pursuant to an alternative pay schedule. The Plan defines the following classes of such claims and provides for the manner of payment.

    Class 1A – Administrative Expenses Fees and Charges Specified in Section 507(a) (2) and Section 507(a) (3).

    Class 1B – Allowed Claims Entitled to Priority under Section 507(a) (8).

  2. Secured Claims: Class 2

    Class 2A – Allowed Secured Claim of Ocwen Loan Servicing, LLC, as servicer for Deutsche Bank National Trust Company, as Trustee for American Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2005-K7 ("Ocwen") with a 1st Lien on 34636 N. Sunset Trail, Carefree, AZ 85377.

    Class 2B – Allowed Secured Claim of JP Morgan Chase Bank, N.A. ("Chase") with a 2nd Lien on 34636 N. Sunset Trail, Carefree, AZ 85377.

  3. Unsecured Claims: Class 3

    Class 3A –General Unsecured Creditors.

  4. Debtor's Interest: Class 4

    Class 4A – Debtor's Interest.


**ARTICLE V**

**TREATMENT OF ALLOWED CLAIMS**

  1. Class 1A – <u>Administrative Claims.</u>

  The Plan classifies all Administrative Claims and expenses allowed under 11 U.S.C. §503(b) and entitled to priority under 11 U.S.C. §507(a)(2) and (a)(3) as Class 1A Administrative Claims, as defined in 11 U.S.C. §503 of the Code. These claims consist of the actual, necessary costs and expenses of preserving the Estate, including taxes incurred, salaries or commissions for services rendered after the commencement of the case, fees of

11

professionals employed by Debtor, and fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code.

Under 11 U.S.C. §1129(a) (9) (A), Administrative Claims must be paid in full on the Effective Date in order for a Plan to be confirmed. The Plan complies with this requirement by providing that Class 1A claims will be paid in full on the Effective Date of the Plan, or upon allowance, whichever occurs first, except to the extent a holder of an Administrative Claim otherwise agrees. Amounts due to holders of Class 1A Claims will be funded from the monies being provided from the sale of Debtor's real and personal property as provided in the Plan or from Debtor's post petition earnings.

Debtor anticipates that the following administrative expenses will accrue during these proceedings and will be payable on the Effective Date of the Plan. In the event the proceeds from the Debtor's sale of property and post petition earnings are sufficient to pay these expenses.

    a.   Professional Fees of Lawyers and Accountants of $15,000.00.

Because the Plan provides for payment in full of Class 1A Claims as of the Effective Date, or as otherwise provided above, the Class 1A Claims are not impaired.

    2.   Class 1B. <u>Tax Claims</u>

The Plan classifies Claims for taxes entitled to priority under §507(a) (8) as Class 1B Claims. Under Section 1129(a)(9)(C), Claims for taxes entitled to priority must be paid in full in regular installment payments in cash over a period not later than 5 years after the date of the order for relief in order to confirm a Plan.

The allowed Priority Tax Claims, together with interest thereon at the Tax Claim rate, shall be paid in equal quarterly installments, the first to be made 90 days after the Effective Date, for the period ending 5 years following the date of assessment of such claim. The Debtor shall pay such claim from the operations of his business or from post petition income.

Because the Plan provides for payment in full of Class 1E Claims and complies with the requirements of §1129(a) (9) (C), holders of Class 1F Claims are not considered a voting class pursuant to §1123(a) (1).

Case 2:14-bk-18525-EPB    Doc 36    Filed 08/13/15    Entered 08/13/15 20:19:34    Desc
Main Document    Page 12 of 50

3.    Class 2A – <u>Allowed Secured Claim of Ocwen with a 1st Lien on 34636 N.</u>
<u>Sunset Trail, Carefree, AZ 85377.</u>

This Class consists of the Allowed Secured Claim held by Ocwen as to its 1st position in the property located at 34636 N. Sunset Trail, Carefree, AZ 85377.  Ocwen will be paid the Allowed Amount of its Secured Claim upon the sale of the real property owned by the Debtor on or before two years (2) from the Effective Date.  Ocwen shall receive all proceeds after expenses of sale from the sale of individual parcels of real property in the event such proceeds are insufficient to pay the full amount of Ocwen's Allowed Secured Claim.  After payment in full of the Allowed Amount of its Secured Claim, proceeds shall then be paid to the junior creditor and to the extent available to Unsecured Creditors and the Debtor.  In the event the Allowed Amount of the Claim is not paid within two years (2) after the Effective Date, Ocwen shall have the right to exercise its non bankruptcy remedies to commence procedures to foreclose on the real property.

4.    Class 2B – <u>Allowed Secured Claim of JP Morgan Chase Bank, N.A. ("Chase")</u>
<u>with a 2nd Lien on 4636 N. Sunset Trail, Carefree, AZ 85377.</u>

This Class consists of the Allowed Secured Claim held by Chase as to its 2nd position in the property located at 34636 N. Sunset Trail, Carefree, AZ 85377.  Chase will be paid the Allowed Amount of its Secured Claim upon the sale of the real property owned by the Debtor, subject to the payment of the senior creditor described in Section 3 above.  Upon payment in full of the amounts owed to Ocwen, Chase shall receive all proceeds after expenses of sale until its Allowed Secured Claim is paid in full.  If the Allowed Amount of its Claim is not paid within two years (2) after the Effective Date, Chase shall have the right to exercise its non bankruptcy remedies to commence procedures to foreclose on the real property.

5.    Class 3A – <u>Allowed Unsecured Claims of Non-Priority Creditors.</u>

With respect to the Allowed Unsecured Claims of Non-Priority Creditors, Debtor shall pay an amount which is in excess of what would be received by such creditors if Debtor's Estate were liquidated under the provisions of Chapter 7of the United States Bankruptcy Code (the "Code").  Debtor anticipates that the sale of the real property will be sufficient to pay all Secured Creditors and the Allowed Amount of Unsecured Claims of Non-Priority Creditors.  The sum will be paid on or before two years after the Effective Date of the

Plan from the proceeds of the sale of real property after payment of the Allowed Amount of Secured Claims and the Allowed Amount of Priority Claims.

6. Class 4A – Pursuant to §1129(a)(15) and (b)(2)(B)(ii) of the Bankruptcy Code, the Debtor shall retain her interest in all estate property in consideration of her funding of Allowed Claims and shall receive all exempt property.

CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE PLAN IN FULL. CREDITORS AND INTEREST HOLDERS ARE FURTHER URGED TO CONSULT WITH COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN

## ARTICLE VI
## POST PETITION OPERATIONS

Debtor intends to sell all parcels of real property within two years after the Effective Date of the Plan. She is knowledgeable with regard to the purchase and sale of real property. Funding pursuant to §1123(a)(8) of the Code shall be provided by the Debtor from the proceeds generated by the sale of the property and all of the earnings from personal services performed by the Debtor and future income of the Debtor as provided for herein. The Debtor shall have authority to retain such professionals as necessary to liquidate assets as necessary. Any post confirmation sales shall not require approval of the Bankruptcy Court. In addition the Debtor shall act as the Disbursing Agent under the Plan.

## ARTICLE VII
## SATISFACTION OF CLAIMS

1. Satisfaction of Claims:

All Creditors, Equity Security Holders and other parties in interest who have or assert Claims in any class shall, upon Confirmation of the Plan, be deemed to have acknowledged that their respective Claims are fully satisfied by the distribution provided herein, each of which Claims, whether known or unknown, scheduled or unscheduled, filed or unfiled, asserted or assertable, is declared and shall be, for all purposes, upon the entry of the Order confirming the Plan, satisfied in full.

Case 2:14-bk-18525-EPB    Doc 36    Filed 08/13/15    Entered 08/13/15 20:19:34    Desc
Main Document        Page 14 of 50

**ARTICLE VIII**

**UNEXPIRED LEASES AND EXECUTORY CONTRACTS**

1.    <u>Assumption</u>:    All leases, wherein the Debtor is the lessee or the lessor and not otherwise rejected or assumed, are hereby assumed, however, the assumption of such leases shall not act as a bar to the assertion by the Debtor of a breach of any such lease by the lessor or lessee.

2.    <u>Cure of Defaults</u>:  Upon Confirmation, the Court shall provide that any contract assumed pursuant to this Article VIII or previously assumed pursuant to Section 365 of the Code, will be in force upon cure of any defaults requiring cure under Section 365 of the Code.

3.    <u>Claims After Rejection</u>:   Any Creditor who wishes to assert a Claim due to the rejection of any executory contract or unexpired lease must file said Claim with the Court within thirty (30) days after Confirmation.

**ARTICLE IX**

**PRESERVATION OF BANKRUPTCY CAUSES OF ACTION**

Any and all causes of action which the Debtor may have or which may arise under any of the provisions of the Code or which may be enforceable under any of the provisions of the Code or any other law or statute, shall be preserved and this Court shall retain jurisdiction to dispose of such causes of action.  All such causes of action shall belong to the Debtor as a part of the assets retained by them.

**ARTICLE X**

**LIQUIDATION ANALYSIS**

The following is a Liquidation Analysis indicating what the Debtor believes creditors would receive in the event of liquidation.  The figures for "market value" and "liquidation value" are the Debtor's best estimate on what these assets are worth on a market or liquidation basis as more specifically discussed in the footnotes.

| ASSET | MARKET VALUE | LIQUIDATION VALUE | EXEMPTION | ENCUMBRANCES | EQUITY |
|---|---|---|---|---|---|
| 5 Parcels of Real Property located at 34636 N. Sunset Trail, Carefree, AZ | $1,272,817[1] | $1,145,566[2] | $150,000 | Ocwen 1st Lien[3] $807,025.17 Chase 2nd Lien $238,095.70 | -0- |
| Checking Account | $11,746[4] | $11,746 | $300.00 | -0- | $11,446 |
| Savings Account | $50.05[4] | $50.05 | -0- | -0- | $50.05 |
| Household Furnishings as per Schedule B | $5,500.00 | $4,950[2] | $6,000.00 | -0- | -0- |
| Books, Pictures, other Art objects per Schedule B | $1,250.00 | $1,125.00[2] | $250.00 | -0- | $875.00 |
| Wearing Apparel | $400.00 | $360.00[2] | $500.00 | -0- | -0- |
| Furs & Jewelry including a Gold Necklace, Pearl Necklace and Diamond Ring per Schedule B | $15,000.00 | $13,500.00[2] | -0- | -0- | $13,500.00 |
| Kaleidoscope Collection | $25,000.00 | $22,500.00[2] | -0- | -0- | $22,500.00 |
| Starr & Associates | -0-[5] | -0- | -0- | -0- | -0- |
| Copyrights for Books per Schedule B | $2,000.00[6] | -0-[7] | -0- | -0- | -0- |
| 2004 Mercedes | $7,774.00[8] | $6,970.00[2] | $6,000.00 | -0- | $970.00 |
| Office Furniture per Schedule B | $400.00 | $360.00[2] | $2,500.00 | -0- | -0- |

**TOTAL EQUITY**      **$49,371.05**

(1) Market Value was set at Zillow's estimated value as of August 6, 2015. Notwithstanding this valuation, the property including the 5 lots and residence is listed at $1,800,000. The lots have not been listed separately for purposes of this liquidation analysis.

(2) Debtor has estimated sales expenses to be 10% of the gross sales price.

(3) These totals were derived from the Proof of Claims ("POC") filed by Ocwen and Chase in these proceedings. Debtor has not verified the accuracy nor has she included any accruing expenses subsequent to the POC's filing dates.

(4) The amounts provided were as of the date of filing. The sums available as of the date of confirmation of the Plan may vary and such variance could have an effect on the Distributions available for Priority Claimants under the Plan provisions.

(5) The Debtor's former business entity which commenced doing business in 1976 and closed its operations as conducted by the Debtor upon her retirement on July 31, 2011.

(6) Debtor receives diminishing royalty payments from three books, "Jury Selection", "Voir Dire" and "Witness Preparation". Debtor prepares annual supplements published by Wolters Kluwer.

(7) There is no liquidation value because continuing income is contingent upon the Debtor preparing annual supplements.

(8) Kelley Blue Book value on the filing date. It is anticipated that this value has now dropped and could have a minor effect on distribution to priority claim creditors.

Creditors should note that on a liquidation basis, full market value for assets cannot be obtained. Further, there are costs associated with a liquidation of assets that must be paid out of any sale proceeds. The liquidation analysis does not contain an estimation of any tax liability which is provided for in Article V. Creditors should also note that after Administration Claims and Priority claims estimated to be in excess of $15,000.00 without consideration of taxes, there is little Liquidation Equity existing for the benefit of general Unsecured Claims. Nevertheless, the Debtor is providing a distribution in excess of the amount Debtor would pay for the benefit of or to unsecured creditors if they had filed under Chapter 7 of the Code. This is being paid in order to allow unsecured creditors a distribution under the Plan in excess of any recovery they might receive if the Debtor had filed for relief under the provisions of Chapter 7. Such payment is possible because the Plan allows for a sufficient time to recognize not only the continued appreciation of real property in the area but the allowance of sufficient time to avoid a hasty liquidation sale. This analysis is provided for informational purposes only, given that the Debtor's Plan although

contemplating the sale of property to pay creditors, intends such sale to be at a then current market value and not on a fast sale, liquidation basis. The importance of the analysis is to illustrate that if the Debtor's estate was liquidated, unsecured creditors although paid a distribution it would be substantially less than anticipated under the Plan. The Debtor's Plan calls for continued and immediate efforts to sell the real property at an arms length transaction price.

## ARTICLE XI

## DISPOSABLE INCOME ANALYSIS AS OF THE PETITION DATE AND CURRENT INCOME EXPENSE ANALYSIS

Pursuant to §1129(a)(15) of the Bankruptcy Code, the Court shall confirm the Plan only if: in a case in which the Debtor is an individual and in which the holder of an Allowed Unsecured Claim objects to the confirmation of the Plan, what the holder of such Allowed Unsecured Claim shall receive under the Plan is either (A) the value, as of the Effective Date of the Plan, of the property to be distributed under the Plan on account of such Allowed Unsecured Claim is not less than the amount of such Allowed Unsecured Claim, or (B) the value of the property to be distributed under the Plan is not less than the projected disposable income of the Debtor (as defined in section 1325(b)(2) to be received during the 5-year period beginning on the date that the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer.

Section 1325(b)(2) defines disposable income as current monthly income received by the Debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable non-bankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably to be expended (A)(i) for the maintenance or support of the Debtor or a dependent of the Debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and (ii) for charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and (B) if the Debtor is engaged in

business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

Because the Debtor is an individual, and assuming a holder of an allowed unsecured claim objects to the confirmation of the Plan, the value of the property to be distributed under the Plan cannot be less than the projected disposable income of the Debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date that the first payment is due under the Plan, or during the period for which the Plan provides payments, whichever is longer. Here the disposable monthly income of the Debtor is such that the amounts the Debtor contribute under the Plan satisfy this section of the Code.

The Debtor's adjusted disposable income which shall include the proceeds from the sale of the real property contemplated herein after confirmation of the Plan shall be sufficient to meet Debtor obligations under the Plan. **The Debtor will fund her secured, administrative, and priority claims in full, and will pay the return to their general unsecured creditors set forth herein through the sale of property as described herein.**

## ARTICLE XII
### EFFECT OF CONFIRMATION

Because the Debtor is an individual, pursuant to §1141(d)(5) of the Bankruptcy Code, Confirmation of the Plan does not provide the discharge for the Debtor. The Debtor will move for the entry of a final decree after the Debtor has provided for the implementation of the Plan, and the final decree will contain the language providing the Debtor shall not receive her discharge and such final decree will not discharge any and all debts of the Debtor, that arose any time before the entry of the confirmation Order, including, but not limited to, all principal and all interest accrued thereon, pursuant to §1141(d) of the Bankruptcy Code until the Debtor complete all payments to unsecured creditors pursuant to the Plan. The discharge shall be effective as to each Claim, regardless of whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim, or whether the holder thereof votes to accept the Plan.

In addition, any pre-confirmation obligations of the Debtor dealt with in the Plan shall be considered New Obligations of the Debtor, and these New Obligations shall not be

considered in default unless and until the Reorganized Debtor defaults on the New Obligations pursuant to the terms of the Plan. The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtor and, once the Plan is confirmed, the only obligations of the Debtor shall be such New Obligations as provided for under the Plan.

## ARTICLE XIII
## TAX CONSEQUENCES

Pursuant to §1125(a)(1) of the Bankruptcy Code, the Debtor is to provide a discussion of the potential material federal tax consequences of the Plan to the Debtor, any successor to the Debtor, and a hypothetical investor typical of the holders of claims or interests in the case, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the Plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether the Disclosure Statement provides adequate information, the Court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information.

Neither the Debtor nor her lawyers or accountants can make any statements with regard to the tax consequences of the Plan on any of the creditors. Although they would note that to the extent the creditor is not paid in full their allowed Claim, they should consult with their tax advisor concerning the possibility of writing off for tax purposes that portion of their Allowed claim that is not paid. Each creditor in this case, when analyzing the Plan, should consult with its own professional advisor to determine whether or not acceptance of the Plan by the creditor will result in any adverse tax consequences to the creditor.

The Bankruptcy Tax Act generally provides that the Debtor does not have to recognize income from the discharge of indebtedness. The Plan contemplates significant discharge of indebtedness; however, because the Debtor is in bankruptcy, she will not have to recognize the discharge of indebtedness as income for tax purposes. The Debtor does not believe the Plan will cause any adverse tax consequences.

# ARTICLE XIV
## NON-ALLOWANCE OF PENALTIES AND FINES

No distribution shall be made under this Plan on account of, and no allowed claim, whether secured, unsecured, property, or administrative, shall include any fine, penalty, exemplary or punitive dames, late charges or other monetary charge relating to or arising from any default or breach by the Debtor, and any claim on account thereof shall be deemed disallowed whether or not an objection to it is filed.

# ARTICLE XV
## MODIFICATION OF PLAN

In addition to his modification rights under §1127 of the Bankruptcy Code, the Debtor may amend or modify her Plan at any time prior to Confirmation without leave of the Court. The Debtor or the Reorganized Debtor may propose amendments and/or modifications of her Plan at any time subsequent to Confirmation with leave of the Court and upon notice to Creditors. After Confirmation of the Plan, the Debtor or the reorganized Debtor may, with approval of the Court, as long as it does not materially or adversely affect the interests of Creditors, remedy any defect or omission or reconcile any inconsistencies of the Plan, or in the Confirmation Order, if any may be necessary to carry out the purposes and intent of her Plan.

# ARTICLE XVI
## GENERAL PROVISIONS

1.	Remedies to Cure Defects   After Confirmation, the Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Confirmation of the Plan, in such a manner as may be necessary to carry out the purpose and the intent of the Plan.

2.	Release of Liens and Interests.  Unless otherwise provided in the Plan or in the Order confirming the Plan, all creditors possessing Allowed Secured Claims shall retain their liens on any of their collateral the Reorganized Debtor acquires as the result of

confirmation of the Plan to secure payment of all cash or other property to be distributed to them on account of those liens pursuant to the terms of the Plan. Such liens on the Reorganized Debtor's property shall be deemed relinquished and reconveyed to the Reorganized Debtor upon the payment to the holders of such liens of all money or property due her in satisfaction of her Allowed Secured Claims according to the terms of the Plan.

       3.        <u>Stay and Enforcement of the Plan</u>. The automatic stay of § 362(a) of the Bankruptcy Code shall terminate when all orders necessary to the confirmation of the Plan become Final Orders. Although confirmation of the Plan may not discharge the Debtor pursuant to Section 1141 of the Bankruptcy Code, the Reorganized Debtor is only assuming the obligations set forth in this Plan in the amounts so specified herein and the Reorganized Debtor is <u>only</u> obligated and liable to make payment of such amounts in the manner set forth by and pursuant to the terms of the Plan. The Reorganized Debtor is not liable to any holders of Allowed Claims and Allowed Interests except as specifically provided for by the terms of the Plan when confirmed by Order of the Bankruptcy Court. If and only if the Reorganized Debtor fails to comply with the provisions of the Plan, the Holders of Claims in any class may proceed against the Reorganized Debtor and her property in order to enforce the Plan under Federal or State Law, in Bankruptcy Court, or any other Court of competent jurisdiction, and in the case of Secured Creditors in accordance with any applicable and existing mortgage, deed of trust, security agreement, or other lien instrument.

       4.        <u>Disputed Claims and Appeals</u>. Where timely objections are made to any Claim in any Class, to any Priority Claim, or to any Claim for administrative expenses, or any motions or proceedings are filed in regard to any lien, claim or privilege, any cash payments due such Claimant shall be held by the Reorganized Debtor in a separately segregated interest bearing bank account, subject to the Bankruptcy Court's jurisdiction. For purposes of distribution to creditors, calculations shall be made as if a Disputed Claim becomes an Allowed Claim. Distributions shall be made to the holder of such claim to the extent such distributions have already been made to Holders of Allowed Claims generally, if the objection to the Claim is overruled and the Disputed Claim becomes an Allowed Claim.

Case 2:14-bk-18525-EPB    Doc 36    Filed 08/13/15    Entered 08/13/15 20:19:34    Desc
Main Document    Page 22 of 50

5. <u>Headings</u>:     Paragraph headings have been inserted in the Plan for the convenience of the reader.  Such headings shall not serve in any way to limit or modify the provisions of the paragraph.

## ARTICLE XVII
## EXHIBITS

A.  Plan of Reorganization


## ARTICLE XVIII
## JURISDICTION OF THE COURT

1.     <u>Reinvestment of Title and Retention of Jurisdiction</u>: On Confirmation, the Debtor shall be reinvested with her assets, subject only to the terms of the Plan and the liens of the Secured Creditors described herein.  The Debtor shall be entitled to manage her affairs, subject to the limitations set forth herein, without further order of the Court.  Subject to such limitations, the Court will retain jurisdiction until the Plan has been fully consummated for certain purposes, including, but not limited to:

2.     <u>The Classification of a Claim of any Creditor, the re-examination of any Claim which has been allowed for the purposes of voting and the determination of such objections as may be filed to any Claim</u>:  The failure by the Debtor to object to or to examine any Claim for the purposes of voting, shall not be deemed a waiver of the Debtor's right to object to or reexamine the Claim in whole or in part.  If a Creditor does not file a Claim in these proceedings, the Debtor may object to the amount scheduled as owing to that Creditor, in whole or in part.  If any objection to a Claim is filed, no payment will be made with respect to such Claim until a determination on such objection has been made by the Court.

3.     <u>Disputed Claims; Objections to Claims</u>: Any party in interest may file an objection to any claim within ninety (90) days from the Effective Date.  Objections not filed within such time shall be deemed waived.

If any Claim or any portion thereof is challenged by objection, the Debtor shall segregate and set aside funds, consistent with the Plan, sufficient to satisfy the Claim as filed, or as scheduled by the Debtor.  When an objection to a Claim has been resolved, distribution shall be made accordingly.

4.      <u>Title to and Liens Against Assets</u>: Determination of all questions and disputes regarding title to and liens on the assets of the Debtor and determination of all causes of action, controversies, disputes or conflicts whether or not subject to an action pending as of the date of Confirmation, between the Debtor and any other party, including, but not limited to, the right of the Debtor to recover assets pursuant to the provisions of the Code.

5.      <u>Correction of Defects</u>: Correction of any defect, the curing of any omission or the reconciliation of any inconsistency in the Plan or in the Confirmation as may be necessary to carry out the purposes and intent of the Plan.

6.      <u>Modification</u>:   After Confirmation, the Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation in such manner as may be necessary to carry out the purposes and effect of the Plan.

7.      <u>Enforcement</u>:   To enforce and interpret the terms and conditions of the Plan.

8.      <u>Further Orders</u>: Entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Court may deem necessary.

9.      <u>Conclusion</u>:    Entry of an order concluding and terminating this case.

**ARTICLE XIX**

**CONSIDERATIONS IN VOTING ON THE CHAPTER 11 PLAN**

1.      <u>Plan Proponent</u>.  In a Chapter 11 Case, the Debtor is the only possible proponent of a Plan of Reorganization during the initial one hundred twenty (120) days of the proceedings, unless certain special conditions (appointment of a trustee or reduction of the one hundred twenty (120) day period), not present in this case are met.  After the one hundred twenty (120) day period (unless the Court extends it), any party in interest may propose a Plan of Reorganization.  Once a Plan has been filed by Debtor, no other Plan may be submitted to Creditors until additional time has expired without acceptance of that Plan.

2.  The Court may confirm a Plan where there is a negative class vote "if the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims

or interest that is impaired under, and has not accepted the Plan "pursuant to Section 1129(1) of the Code.

3.    Before the Court can confirm a Plan, the requirements of Chapter 11 must be met.  There are certain formalities a Plan must adhere to under the Code.  Among others, the Plan must designate classes and specify whether or not classes are impaired, and their treatment if they are impaired.  The Plan must also provide adequate means for its execution.

4.    The Court can confirm a Plan under section 1129 of the Code; assuming all other requirements are met, if two-thirds (2/3) in amount and more than one-half (1/2) in number of the allowed interests of each impaired class of claims and two-thirds (2/3) in amount of the allowed interests of each impaired class of interests accept.  In the alternative, if there is a dissenting class or classes of claims or interests, the Court can confirm a Plan if the proponent of the Plan so requests and the Court finds that all requirements other than all classes consenting are met and the Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests impaired under, and who has not accepted the Plan.

# ARTICLE XX
## ACCEPTANCE AND CONFIRMATION

A- FEASIBILITY

1.    <u>Description of Debtor' Assets</u>

The assets of the Debtor are listed on the Debtor's Schedules filed with the Court. In addition the assets of the Debtor as of the Date of this Disclosure Statement are contained in the Liquidation Analysis included in Article X of this Disclosure Statement.  As demonstrated in the Liquidation Analysis unsecured creditors will receive substantially less on their claims in the event of liquidation of the assets of the Debtor.

2.    The Debtor believes that the Plan satisfies the requirements of §1129(a)(ii) of the Code and that the Disclosure Statement and its Exhibits demonstrate that Confirmation of the Plan is not likely to be followed by the liquidation of or need for further reorganization of the Reorganized Debtor.

Case 2:14-bk-18525-EPB    Doc 36    Filed 08/13/15    Entered 08/13/15 20:19:34    Desc
Main Document        Page 25 of 50

## B- CONFIRMATION OVER DISSENTING CLASS

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, so long as at least one impaired class of claims has accepted it. These ""cram-down"" provisions for confirmation of a plan, despite the non-acceptance of one or more impaired classes of claims or interests, are set forth in §1129(b) of the Bankruptcy Code.

If a Class of secured Claims rejects the Plan, the Plan may still be confirmed so long as the Plan does not discriminate unfairly as to a Class and is "fair and equitable" to such Class under §1129 (b) of the Bankruptcy Code and applicable case law. Section 1129 (b) of the Bankruptcy Code states that the "fair and equitable standard may require, among other things, that the Plan provide (i) that the lien securing the Claims of members of the Class is to be left in place and the holders of the Claim will receive deferred cash payments of a present value equal to the lesser of the amount of such Claims or the value of the collateral securing such Claims; (ii) that the collateral securing the Claims be sold free of the lien with the lien attaching to the proceeds and with the lien on the proceeds being treated under one of the two other standards described in this paragraph; or (iii) a treatment for the Claim that is the "indubitable equivalent" of the Claim. The Debtor believes that the Plan satisfies the test and therefore that the Plan can be confirmed even if it is rejected by holders of Secured Claims. If a Class of unsecured Claims rejects the Plan, the Plan may still be confirmed so long as the Plan is not unfairly discriminatory as to that Class and is "fair and equitable" to such Class. Under §1129 (b) of the Bankruptcy Code, a Plan is "fair and equitable" as to a class if, among other things, the Plan provides that (i) each holder of a Claim included in the rejecting class receive or retain on account of that Claim property which has a value, as of the Effective Date, equal to the allowed amount of such Claim; or that (ii) the holder of any Claim or interest that is junior to the Claim of such Class will not receive or retain on account of such junior Claim or interest any property at all; or (iii) although not included in § 1129 (b) but as determined by case law that if a junior Claim receives or retains anything on account, even though the senior holder has not received a one hundred percent (100%) return, that a substantial new contribution, as determined by the Court, shall be made by the junior Claimant. The Debtor believes that the Plan meets this test as to all impaired Classes

of unsecured Claims. Therefore the Debtor believes the Plan could be confirmed even if it is rejected by the Classes of unsecured Claims as long as at least one impaired Class accepts the Plan.

With respect to a Class of interests, such interest holders may not receive any distribution or retain any value on account of such interests unless all Classes of creditors have been paid in full or that a substantial new contribution, as determined by the Court, shall be made by any interest holder retaining any distribution or value on account of such interests in the event all classes of creditors have not been paid in full.

## ARTICLE XXI
## ALTERNATIVES TO THE PLAN

The Debtor expects that the Plan will enable the Reorganized Debtor to perform all matters necessary to assure that the Property will be sold at the best possible price and not for fast sale liquidation value. However, if the Plan is not confirmed, the Debtor would continue to seek other rehabilitative alternates. In the event that no suitable alternative could be found, the Debtor might be forced to recommend to the Court the forced liquidation of the Debtor's estate which would not be in the unsecured creditors' best interests.

The Debtor is of the opinion that liquidation would not be in the best interests of the creditors and interest holders generally. As stated above, liquidation of the Debtor's estate in the manner contemplated in Chapter 7 cases would render little or no distributions to unsecured creditors.

## ARTICLE XXII
## CLOSING OF THE CASE

If the Court does not close this case on its own motion, the Reorganized Debtor will move the Court to close this case once the Plan is deemed substantially consummated. Until substantial consummation, the Reorganized Debtor will be responsible for filing pre- and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee, in case, pursuant to 28 U.S.C. §1930, as amended. Pursuant to 11 U.S.C. §1129(a)(12), all fees payable under section 1930 of title

28, as determined by the Court at the hearing on confirmation of the Plan, will be paid, in cash, on the Effective Date.

## ARTICLE XXIII
## DISCLAIMER

Court approval of this Disclosure Statement and the accompanying Plan of Reorganization, including exhibits, is not a certification of the accuracy of the contents thereof. Furthermore, Court approval of these documents does not constitute the Court's opinion as to whether the Plan should be approved or disapproved.

## ARTICLE XXIV
## RISKS

The risk of the Plan lies essentially in the necessity of real property to increase in value as has been the case in the recovery period in which Arizona and the nation are presently experiencing.

## ARTICLE XXV
## PROPONENTS' RECOMMENDATION/ALTERNATIVES TO THE PLAN

The Debtor recommends that all creditors entitled to vote for the Plan do so. The alternatives to confirmation of the Plan would be either conversion of this case to a case under Chapter 7 of the Bankruptcy Code or its dismissal.

Conversion will result in the appointment of a Chapter 7 trustee and, most likely, the hiring of an attorney by the trustee. Expenses incurred in administering the Chapter 7 case will take priority in the right to payment over allowed, administrative expenses incurred in the chapter 11 case. Both Chapter 7 and Chapter 11 administrative expenses take priority over the payment of unsecured claims without priority. In other words, conversion would likely decrease the net amount available to pay currently existing creditors. Further, a Chapter 7 proceeding would not provide the Debtor with the means to pay their Priority Claims and Non-Priority Claims over time.

In addition, conversion would result in unsecured creditors receiving nothing. A chapter 7 trustee is not limited to specific deadlines for closing a case and distributing assets to creditors. It is not unusual for distributions in Chapter 7 cases to be delayed for years. Moreover, the return on the assets of the Estate a trustee is likely to obtain through a standard Chapter 7 liquidation would be nothing as described above.

Dismissal of this case would leave all creditors holding unsecured claims in the position of having to institute legal proceedings to collect their debts. Moreover, outside the context of a bankruptcy case, the first creditor to collect may collect all non-exempt property, leaving nothing to be paid to remaining creditors. In addition, dismissal of this case would open the door for the Debtor to file a new bankruptcy case, which could further delay or reduce funds available to pay creditors.

For all these reasons, the Debtor urges you to vote to accept the Plan and to return your ballots in time to be counted.

**RESPECTFULLY SUBMITTED** this 13th day of August, 2015.

HAUF LAW PLC

/s/ Adam E. Hauf
Adam E. Hauf
Attorney for Debtor

Original filed this 13th
day of August, 2015

By: /s/ Deanna Cresta __
     Deanna Cresta

# EXHIBIT A

Adam E. Hauf
**The Law Office of Adam Hauf**
**4225 W Glendale, Ste A104**
**Phoenix, Arizona 85051**
**P: 623.252.0742 F: 623.321.2310**
**admin@hauflaw.com**
**Attorney for Debtors**

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF ARIZONA

In re:

**VIVIAN HALE STARR,**

     Debtor.

Chapter 11 Proceedings

Case No.: 2:14-bk-18525-EPB

PLAN OF REORGANIZATION

OF

DEBTOR-IN-POSSESSION

VIVIAN HALE STARR

Dated: August 13, 2015

VIVIAN HALE STARR ("Debtor") proposes the following Plan of Reorganization pursuant to Chapter 11 of the Bankruptcy Code.  All creditors are encouraged to consult the Disclosure Statement filed herewith before voting to accept or reject this Plan.  The Disclosure Statement contains a discussion of the Debtor's history, a summary analysis of this Plan and other relevant financial information.

## ARTICLE I

DEFINITIONS

A-  SCOPE OF DEFINITIONS

For purposes of this Plan, except as expressly provided or unless the context otherwise requires all capitalized terms not otherwise defined shall have the meanings assigned to them in this Article I of the Plan.  Whenever the context requires, such terms shall include the plural and the singular number, the masculine gender shall include the feminine, and the feminine gender shall include the masculine.  A term used in the Plan and not defined herein, has the meaning ascribed to such term in the Code or Rules.

B-  DEFINED TERMS

The following terms have the following meanings whenever used in this Plan.

1.      Allowed Administrative Claim:  An Allowed Claim for payment of an administrative expense of a kind specified in §503(b) of the Code and referred to in §507(a)(2) of the Code, including without limitation:

(a)      The actual and necessary costs and expenses of preserving the Debtors' estate and of operating the business of the Debtors (other than such Claims or portions thereof which, by their express terms, are not due or payable on the Effective Date);

(b)      The full amount of all Claims for allowance of compensation or reimbursement of costs and expenses for legal, accounting or other professional services under Section 330 or Section 503(b) of the Code, or otherwise allowed by the Court;

(c)      All fees and charges assessed against the Debtor's estate under Chapter 123 of Title 28, United States Code; and

(d)     Expenses incurred by the Debtor in connection with this case, including expenses incurred in obtaining Confirmation of the Plan.

2.     <u>Allowed Claim or Allowed Interest</u>:  Allowed Claim or Allowed Interest means a Claim against or Equity Security Claim in the Debtors to the extent that: (a) a proof of such Claim or interest was (i) timely filed; (ii) deemed filed pursuant to Section 1111(a) of the Code; or (b)(i) which is not a disputed Claim, or (ii) which is allowed (and only to the extent allowed) by a Final Order.

3.     <u>Ballot:</u>  Each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote as specified in this Plan in connection with the solicitation of acceptances of this Plan.

4.     <u>Bankruptcy Code</u>:  Bankruptcy Code is the Bankruptcy Reform Act of 1978 (the "Code"), sometimes referred to as the Bankruptcy Code of 1978, as contained in Title 11 U.S.C. Section 101 et seq., and all amendments thereto.

5.     <u>Bar Date</u>:       The Order and Notice of Time Within Which To File Proofs Of Claim And For Hearing On Disclosure Statement entered on _____ ("Order And Notice re Bar Date") established the Bar Date as the date of the Court's approval of the Disclosure Statement.  Notice of that Order And Notice re Bar Date was given to all Creditors and other parties in interests in these proceedings.  A separate Bar Date may apply to Claims arising out of the rejection of executory contracts and unexpired leases specified in Article VII of the Plan or to deficiency Claims arising out of the abandonment of collateral to previously Secured Creditors, or arising out of orders granting relief from the provisions of Section 362 of the Code.

6.     <u>Business Day</u>:     A day that is not a Saturday, Sunday or federal holiday recognized by the federal courts for the District of Arizona or Arizona state holiday recognized by the federal courts for the District of Arizona.

7.     <u>Chapter 11</u>:     Chapter 11 of the Bankruptcy Code.  Reference to section numbers are references to sections in the Bankruptcy Code, 11 U.S.C. Section 101 et seq., Public Law 95-598, effective October 1, 1979, as amended, unless otherwise specified.

8.     <u>Claim:</u>     A Claim is a right to payment from the Debtor, which is evidenced by a timely filed proof of claim or application for payment which is allowed by the Court, or if

a proof of claim is not filed, a right which otherwise appears in the applicable schedules of the Debtor and (1) is not listed as disputed, contingent or unliquidated, or (2) has been resolved by Final Order of the Court pursuant to the terms of the Plan.

9.    Claims of the Estate:    Claims of the Estate means all asserted and unasserted Claims of the Debtor, existing prior to Confirmation, against anyone.

10.    Class:    Any Class into which allowed claims or Allowed Interests are classified pursuant to Article IV.

11.    Confirmation:    Entry by the Court of an Order Confirming the Plan at or after a hearing held pursuant to Section 1128 of the Code.

12.    Confirmation Hearing:    The hearing to be held by the Court to determine whether or not the Debtor's Plan meets the requirements of Chapter 11 of the Code and is entitled to Confirmation.

13.    Confirmation Order:    Confirmation Order means an order of the Court confirming the Plan.  The date the Confirmation Order is entered on the clerk's docket is the Confirmation Date.

14.    Court:    The United States Bankruptcy Court, District of Arizona, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

15.    Creditors:    Creditors are all Creditors of the Debtor holding allowed Claims for debts, liabilities, demands or Claims of any character whatsoever, as defined in Section 101(4) of the Bankruptcy Code.

16.    Debtor:    The Debtor VIVIAN HALE STARR is an Arizona resident.

17.    Disclosure Statement: The Disclosure Statement submitted with the Plan pursuant to Bankruptcy Code §1125 in its present form or as it may be altered, amended or modified from time to time.

18.    Disputed Claim:  Claims against the Debtor (a) which are scheduled by the Debtor as disputed contingent or unliquidated on or before the Effective Date, or (b) as to which an objection has been filed on or before the Effective Date or such other date as set by the Court for filing objections to claims, by a party in interest and which objection has not been withdrawn or resolved by entry of a Final Order on or before the Effective Date.

19.  <u>Effective Date</u>:  The first Business Day following the thirtieth day after entry of a Final Order confirming the Plan.

20.  <u>Filing Date</u>:  December 18, 2014 was the date of the filing of the Chapter 11 Petition in this case by VIVIAN HALE STARR.

21.  <u>Final Order</u>:  A Final Order is an Order of the Court which, not having been reversed, modified or amended, and not being stayed, and the time to appeal from which or to seek review or certiorari or rehearing of which having expired, and from which no such appeal, review, certiorari or rehearing is pending, has become conclusive of all matters adjudicated thereby and in full force and effect.

22.  <u>Final Order Confirming Plan</u>: The Final Order of the Court determining that the Plan meets the requirements of Chapter 11 of the Code and is entitled to Confirmation.

23.  <u>Impaired</u>:  When used with reference to a Claim or Interest, a Claim or Interest that is impaired with the meaning of Code §1124.

24.  <u>Insider</u>:  A person or entity within the definition contained at §101(31) of the Bankruptcy Code.

25.  <u>New Obligations</u>:  Those debts of the Debtor which existed pre-confirmation, but which are modified by the confirmed Plan resulting in the creation of a new note.  The obligations for which the Reorganized Debtor have liability under the terms of the confirmed Plan.  Said new obligations shall not be considered in default unless and until the Reorganized Debtor default on said obligations after the Effective Date.

26.  <u>Oversecured</u>:  The term describing the Allowed Claim of a secured Creditor when the value of the collateral securing said Allowed Claim exceeds the amount of the debt serving as the basis for said Allowed Claim.

27.  <u>Person</u>:  Any individual, corporation, partnership, joint venture, association, joint stock company, trust, unincorporated association or organization, governmental agency, or associated political subdivision.

28.  <u>Petition Date</u>:  The 18th day of December, 2014.

29.  <u>Plan</u>:    The Plan of Reorganization in its present form, or as it may be amended, supplemented or modified.

30. <u>Priority Claims:</u>  Any Claim entitled to priority pursuant to Section 507(a) of the Code.

31. <u>Pro Rata:</u>  The proportion that the amount of a Claim against the Debtor in a particular class bears to the aggregate amount of all Claims (including undetermined Claims until disallowed) in such class.

32. <u>Property of the Debtor:</u>  The property of the Debtor as provided for in Bankruptcy Code § 541.

33. <u>Property or Properties:</u>  All property of the estate of the Debtor as previously or hereafter determined by Final Order of a Court of competent jurisdiction and/or as defined in Section 541 of the Code, including, but not limited to, any and all Claims or causes of action in favor of the Debtor against third parties (except as otherwise provided herein).

34. <u>Reorganized Debtor:</u>  The Debtor and her successors and assigns.

35. <u>Tax Claim Rate:</u>  The rate of interest, to be determined by the bankruptcy Court at the Confirmation Hearing, that, when applied to the amount of an Allowed Priority Claim to be paid in installments will result in such installments being of an aggregate value, as of the Effective Date, equal to the allowed amount of such Claim, consistent with the requirements of 11 U.S.C. §1129(a)(9).  At the Confirmation Hearing, the Debtor will request the Court determine that the Tax Claim Rate is five percent per annum.

36. <u>Undersecured:</u>  The term describing the Allowed Claim of a secured Creditor when the value of the collateral securing said Allowed Claim is less than the debt which services as the basis of said Allowed Claim.

37. <u>Unsecured Tax Claims:</u>  Any unsecured Claim for taxes entitled to priority pursuant to Section 507(a)(8) of the Code.

38. <u>Unsecured Claims:</u>  All Creditors, other than taxing entities, having Claims against the Debtor which are not Secured Claims.

39. <u>Unsecured Creditors:</u>  All Creditors of the Debtor holding Claims for unsecured debts, unsecured liabilities, unsecured demands or Unsecured Claims of any character whatsoever, except Claims entitled to priority pursuant to Section 507 of the Code and Claims of Equity Security Holders.

## ARTICLE II

### CERTAIN GENERAL TERMS AND CONDITIONS

The following general terms and conditions apply to the Plan:

1.     Class of Claims and Payment:     Various classes of Claims are defined in the Plan.  The Plan is intended to deal with all Claims against the Debtor of whatever character, whether or not contingent or liquidated, and whether or not allowed by the Court pursuant to Section 502(a) of the Code.  However, only those Claims allowed pursuant to Section 502(a) of the Code will receive payment under the Plan.

2.     Modification of the Plan.     The Plan may be modified upon application of the Debtor or corrected prior to Confirmation, without notice or hearing, and without any additional Disclosure Statement, pursuant to Section 1125 of the Code, provided that the Court finds that such modification does not materially or adversely affect any Creditor or class of Creditors or other parties in interest.

3.     Preserved Liens:     To the extent required under Section 1124(2) of the Code, to preserve the rights of a Creditor having a Secured Claim dealt with pursuant to that Section, the lien or encumbrance of that Creditor shall, to the extent valid, be preserved.

4.     Securities Laws:     Any satisfaction provided to any Creditor or other party in interest pursuant to the Plan which may be deemed to be a security, is exempt from registration under certain state and federal securities laws pursuant to Section 1145 of the Code.

5.     Time for Filing of Claims:     The list of Creditors filed in these proceedings by the Debtor shall constitute the filing of a Claim by each Creditor which is not listed as disputed, contingent or unliquidated as to amount, but the Debtor reserves the right to object to any such Claim where it appears that the amount scheduled by the Debtor are improper or where there is some dispute with regard to that Claim.  All other Creditors, or Creditors who disagree with the amounts as scheduled by the Debtor must have filed a Claim by _____ unless a separate Bar Date applies for the rejection of the executory contracts and unexpired leases under the Plan or where there exists deficiency claims arising

Case 2:14-bk-18525-EPB     Doc 36     Filed 08/13/15     Entered 08/13/15 20:19:34     Desc
Main Document       Page 37 of 50

out of the abandonment of collateral to previously Secured Creditors or as a result of the granting of an order for relief from the provisions of Section 362 of the Code.

## ARTICLE III

### BASIS OF THE PLAN

The Debtor resides in Maricopa County, Arizona and is retired and receives Social Security benefits. The Debtor owns 5 parcel of real property, two of which are used as Debtor's personal residence (collectively the "Properties").

The Classification of Debtor's Creditors is set forth in Article IV of the Disclosure Statement and the specific treatment of Creditor Claims is set forth in Article V of the Disclosure Statement.

Generally, the Plan provides as follows:

Administrative claims and other priority claimants will be paid one hundred (100%) percent of their Allowed Claims which includes payment of unpaid taxes, if any, in accordance with the provisions of the Code or in such other manner as such claimants may otherwise agree.

Real Property Secured Claimants will receive 100% of their Allowed Secured Claim.

General Unsecured Creditors shall receive an amount equal to an amount greater than they would have received if Debtor had filed for relief under Chapter 7 of the Code and a sum greater than provided in 11 USC §1129(b)(2) upon the sale of real property as provided for under the provisions of the Plan.

Debtor as the Interest holder will, pursuant to §1129(a)(15) and (b)(2)(B)(ii) of the Code, retain her interest in all estate property in consideration of her funding of Allowed Claims and shall receive all exempt property.

THE FOREGOING DISCUSSION IS ONLY A BRIEF SUMMARY OF THE PLAN AND ALL PARTIES SHOULD REVIEW THE FULL TEXT OF THE PLAN.

# ARTICLE IV

## CLASSIFICATION OF CLAIMS AND INTERESTS

The Plan provides for the separate classification of all claims against and interests as follows.

    1. Priority Claims

Section 507 of the Bankruptcy Code identifies certain types of Claims entitled to payment with priority over all other unsecured claims. Certain of the priority claims must be paid in full on the Effective Date of the Plan, pursuant to section 1129(a)(9)(A) and (B) of the Bankruptcy Code, or consent to an alternative payment schedule, in order for a plan to be confirmed. Certain priorities provided for in Section 507 to wit 507(a)(1), (3), (4), (5), (6), (7), (9) and (10) are not applicable to Debtor. In the event it should determine any of those priorities are owed by Debtor they shall be paid on the Effective Date of the Plan, or as agreed pursuant to an alternative pay schedule. The Plan defines the following classes of such claims and provides for the manner of payment.

        Class 1A – Administrative Expenses Fees and Charges Specified in Section 507(a) (2) and Section 507(a) (3).

        Class 1B – Allowed Claims Entitled to Priority under Section 507(a) (8).

    2. Secured Claims: Class 2

        Class 2A – Allowed Secured Claim of Ocwen Loan Servicing, LLC, as servicer for Deutsche Bank National Trust Company, as Trustee for American Mortgage Securities, Inc., Asset-Backed Pass-Through Certificates, Series 2005-K7 ("Ocwen") with a 1st Lien on 34636 N. Sunset Trail, Carefree, AZ 85377.

        Class 2B – Allowed Secured Claim of JP Morgan Chase Bank, N.A. ("Chase") with a 2nd Lien on 34636 N. Sunset Trail, Carefree, AZ 85377.

    3. Unsecured Claims: Class 3

        Class 3A –General Unsecured Creditors.

    4. Debtor's Interest: Class 4

        Class 4A – Debtor's Interest.

Case 2:14-bk-18525-EPB    Doc 36    Filed 08/13/15    Entered 08/13/15 20:19:34    Desc
Main Document        Page 39 of 50

# ARTICLE V

## TREATMENT OF ALLOWED CLAIMS

1. Class 1A – <u>Administrative Claims.</u>

The Plan classifies all Administrative Claims and expenses allowed under 11 U.S.C. §503(b) and entitled to priority under 11 U.S.C. §507(a)(2) and (a)(3) as Class 1A Administrative Claims, as defined in 11 U.S.C. §503 of the Code. These claims consist of the actual, necessary costs and expenses of preserving the Estate, including taxes incurred, salaries or commissions for services rendered after the commencement of the case, fees of professionals employed by Debtor, and fees and charges assessed against the Estate under Chapter 123 of Title 28 of the United States Code.

Under 11 U.S.C. §1129(a) (9) (A), Administrative Claims must be paid in full on the Effective Date in order for a Plan to be confirmed. The Plan complies with this requirement by providing that Class 1A claims will be paid in full on the Effective Date of the Plan, or upon allowance, whichever occurs first, except to the extent a holder of an Administrative Claim otherwise agrees. Amounts due to holders of Class 1A Claims will be funded from the monies being provided from the sale of Debtor's real and personal property as provided in the Plan or from Debtor's post petition earnings.

Debtor anticipates that the following administrative expenses will accrue during these proceedings and will be payable on the Effective Date of the Plan. In the event the proceeds from the Debtor's sale of property and post petition earnings are sufficient to pay these expenses.

b. Professional Fees of Lawyers and Accountants of $15,000.00.

Because the Plan provides for payment in full of Class 1A Claims as of the Effective Date, or as otherwise provided above, the Class 1A Claims are not impaired.

2. Class 1B. <u>Tax Claims</u>

The Plan classifies Claims for taxes entitled to priority under §507(a) (8) as Class 1B Claims. Under Section 1129(a)(9)(C), Claims for taxes entitled to priority must be paid in full in regular installment payments in cash over a period not later than 5 years after the date of the order for relief in order to confirm a Plan.

The allowed Priority Tax Claims, together with interest thereon at the Tax Claim rate, shall be paid in equal quarterly installments, the first to be made 90 days after the Effective Date, for the period ending 5 years following the date of assessment of such claim. The Debtor shall pay such claim from the operations of his business or from post petition income.

Because the Plan provides for payment in full of Class 1E Claims and complies with the requirements of §1129(a) (9) (C), holders of Class 1F Claims are not considered a voting class pursuant to §1123(a) (1).

3. Class 2A – <u>Allowed Secured Claim of Ocwen with a 1st Lien on 34636 N. Sunset Trail, Carefree, AZ 85377.</u>

This Class consists of the Allowed Secured Claim held by Ocwen as to its 1st position in the property located at 34636 N. Sunset Trail, Carefree, AZ 85377. Ocwen will be paid the Allowed Amount of its Secured Claim upon the sale of the real property owned by the Debtor on or before two years (2) from the Effective Date. Ocwen shall receive all proceeds after expenses of sale from the sale of individual parcels of real property in the event such proceeds are insufficient to pay the full amount of Ocwen's Allowed Secured Claim. After payment in full of the Allowed Amount of its Secured Claim, proceeds shall then be paid to the junior creditor and to the extent available to Unsecured Creditors and the Debtor. In the event the Allowed Amount of the Claim is not paid within two years (2) after the Effective Date, Ocwen shall have the right to exercise its non bankruptcy remedies to commence procedures to foreclose on the real property.

4. Class 2B – <u>Allowed Secured Claim of JP Morgan Chase Bank, N.A. ("Chase") with a 2nd Lien on 4636 N. Sunset Trail, Carefree, AZ 85377.</u>

This Class consists of the Allowed Secured Claim held by Chase as to its 2nd position in the property located at 34636 N. Sunset Trail, Carefree, AZ 85377. Chase will be paid the Allowed Amount of its Secured Claim upon the sale of the real property owned by the Debtor, subject to the payment of the senior creditor described in Section 3 above. Upon payment in full of the amounts owed to Ocwen, Chase shall receive all proceeds after expenses of sale until its Allowed Secured Claim is paid in full. If the Allowed Amount of its Claim is not

paid within two years (2) after the Effective Date, Chase shall have the right to exercise its non bankruptcy remedies to commence procedures to foreclose on the real property.

    5.  Class 3A – <u>Allowed Unsecured Claims of Non-Priority Creditors.</u>

    With respect to the Allowed Unsecured Claims of Non-Priority Creditors, Debtor shall pay an amount which is in excess of what would be received by such creditors if Debtor's Estate were liquidated under the provisions of Chapter 7of the United States Bankruptcy Code (the "Code"). Debtor anticipates that the sale of the real property will be sufficient to pay all Secured Creditors and the Allowed Amount of Unsecured Claims of Non-Priority Creditors. The sum will be paid on or before two years after the Effective Date of the Plan from the proceeds of the sale of real property after payment of the Allowed Amount of Secured Claims and the Allowed Amount of Priority Claims.

    6.  Class 4A – Pursuant to §1129(a)(15) and (b)(2)(B)(ii) of the Bankruptcy Code, the Debtor shall retain her interest in all estate property in consideration of her funding of Allowed Claims and shall receive all exempt property.


    CREDITORS AND INTEREST HOLDERS ARE URGED TO READ THE PLAN IN FULL. CREDITORS AND INTEREST HOLDERS ARE FURTHER URGED TO CONSULT WITH COUNSEL IN ORDER TO FULLY UNDERSTAND THE PLAN


### ARTICLE VII
<u>SATISFACTION OF CLAIMS</u>

    1  <u>Satisfaction:</u> All Creditors, Equity Security Holders and other parties in interest who have or assert Claims in any class shall, upon Confirmation of the Plan, be deemed to have acknowledged that their respective Claims are fully satisfied by the distribution provided herein, each of which Claims, whether known or unknown, scheduled or unscheduled, filed or unfiled, asserted or assertable, is declared and shall be, for all purposes, upon the entry of the Order confirming the Plan, satisfied in full.

## ARTICLE VIII

### UNEXPIRED LEASES AND EXECUTORY CONTRACTS

1.     Assumption:   All leases, wherein the Debtor is the lessee or lessor, are hereby assumed, however, the assumption of such leases shall not act as a bar to the assertion by the Debtor of a breach of any such lease by the lessor.

2.     Cure of Defaults:  Upon Confirmation, the Court shall provide that any contract affirmed pursuant to this Article VII or previously assumed pursuant to Section 365 of the Code, will be in force upon cure of any defaults requiring cure under Section 365 of the Code.

3.     Claims After Rejection: Any Creditor who wishes to assert a Claim due to the rejection of any executory contract or unexpired lease must file said Claim with the Court within thirty (30) days after Confirmation.

## ARTICLE IX

### FUNDING AND IMPLEMENTATION OF PLAN

1.     Funding:  Pursuant to §1123(a)(8) of the Bankruptcy Code, the Debtor shall provide for the payment to creditors under the Plan of all or such portion of earnings from personal services performed by the Debtor after the commencement of the case or other future income of the Debtor as is necessary for the execution of the Plan.  The Debtor will contribute her Excess Cash Flow in an amount sufficient to fund all of the requirements set forth in the Plan all in accordance with the projections provided in the Disclosure Statement.

2.     Liquidation of Estate Property:  The Debtor shall have the authority to retain such brokers, agents, counsel, or representatives, as they deem necessary to liquidate all assets of the bankruptcy estate.  Prior to Confirmation, the Debtor shall sell her Real Property pursuant to an order of the Bankruptcy Court to the highest and best bidder.  Any sales which occur post-confirmation shall not require approval of the Bankruptcy Court for the sale, although the Debtor will be free to seek such order if it deems appropriate.

3.     Management:  The Reorganized Debtor will continue to operate under the same management structure utilized prior to Confirmation.

4.     Disbursing Agent:  The Reorganized Debtor shall act as the Disbursing Agent under the Plan

# ARTICLE X

## PRESERVATION OF BANKRUPTCY CAUSES OF ACTION

1.     <u>Preservation</u>:   Any and all causes of action which the Debtor may have or which may arise under any of the provisions of the Code or which may be enforceable under any of the provisions of the Code or any other law or statute, shall be preserved and this Court shall retain jurisdiction to dispose of such causes of action. All such causes of action shall belong to the Debtor as a part of the assets retained by them.

# ARTICLE XI

## GENERAL PROVISIONS

1     <u>No Additional Charges</u>: Except as expressly stated in the Plan, or as allowed by Court Order, no interest, penalty, late charge or additional charges (such as attorney's fees) shall be allowed on any Claim subsequent to the Filing Date.

2     <u>Remedies to Cure Defects</u>: After Confirmation, the Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Confirmation of the Plan, in such a manner as may be necessary to carry out the purpose and the intent of the Plan.

3     <u>Discharge</u>:      Nothing in the Plan shall be deemed to waive, limit or restrict in any way the discharge granted upon Confirmation of the Plan in Section 1141 of the Code. Except as otherwise provided in the Plan or in the Order confirming the Plan, such Confirmation Order acts as of the Effective Date as a discharge, of any and all debts of the Debtor that arose at any time before the entry of the Confirmation Order, including, but not limited to, all principal and any and all interest accrued thereon, pursuant to Section 1141(d)(1) of the Code. The discharge of the Debtor shall be effective as to each Claim, regardless of whether a proof of claim thereof was filed, whether the Claim is an Allowed Claim or whether the holder thereof votes to accept the Plan.

4.     <u>Release of Liens and Interests</u>. Unless otherwise provided in the Plan or in the Order confirming the Plan, all creditors possessing Allowed Secured Claims shall retain their

44

liens on any of their collateral the Reorganized Debtor acquires as the result of confirmation of the Plan to secure payment of all cash or other property to be distributed to them on account of those liens pursuant to the terms of the Plan. Such liens on the Reorganized Debtor' property shall be deemed relinquished and reconveyed to the Reorganized Debtor upon the payment to the holders of such liens of all money or property due them in satisfaction of their Allowed Secured Claims according to the terms of the Plan.

5. <u>Stay and Enforcement of the Plan</u>. The automatic stay of § 362(a) of the Bankruptcy Code shall terminate when all orders necessary to the confirmation of the Plan become Final Orders. Although confirmation of the Plan may not discharge the Debtor pursuant to Section 1141 of the Bankruptcy Code, the Reorganized Debtor in only assuming the obligations set forth in this Plan in the amounts so specified herein and the Reorganized Debtor is only obligated and liable to make payment of such amounts in the manner set forth by and pursuant to the terms of the Plan. The Reorganized Debtor is not liable to any holders of Allowed Claims and Allowed Interests except as specifically provided for by the terms of the Plan when confirmed by Order of the Bankruptcy Court. If and only if the Reorganized Debtor fails to comply with the provisions of the Plan, the Holders of Claims in any class may proceed against the Reorganized Debtor and their property in order to enforce the Plan under Federal or State Law, in Bankruptcy Court, or any other Court of competent jurisdiction, and in the case of Secured Creditors in accordance with any applicable and existing mortgage, deed of trust, security agreement, or other lien instrument.

6. <u>Disputed Claims and Appeals</u>. Where timely objections are made to any Claim in any Class, to any Priority Claim, or to any Claim for administrative expenses, or any motions or proceedings are filed in regard to any lien, claim or privilege, any cash payments due such Claimant shall be held by the Reorganized Debtor in a separately segregated interest bearing bank account, subject to the Bankruptcy Court's jurisdiction. For purposes of distribution to creditors, calculations shall be made as if a Disputed Claim becomes an Allowed Claim. Distributions shall be made to the holder of such claim to the extent such distributions have already been made to Holders of Allowed Claims generally, if the objection to the Claim is overruled and the Disputed Claim becomes an Allowed Claim.

7.     Tax Considerations.  The Debtor does not know of and shall not make any representations about any possible tax consequences that may affect creditors.  Federal income tax consequences may result to particular creditors.  Certain types of creditors may be subject to special rules that cannot be addressed herein.  There may also be state, local or foreign tax considerations applicable to each creditor.

EACH CREDITOR IS URGED TO CONSULT HIS OR HER OWN TAX ADVISOR AS TO THE CONSEQUENCES OF THE PLAN FOR HIM, HER OR IT UNDER FEDERAL, STATE AND LOCAL TAX LAW.

8     Headings:     Paragraph headings have been inserted in the Plan for the convenience of the reader.  Such headings shall not serve in any way to limit or modify the provisions of the paragraph.

## ARTICLE XII
## REORGANIZED DEBTOR

A- FEASIBILITY

1.  Description of Debtor's Assets

The assets of the Debtor are listed on the Debtor's Schedules filed with the Court.

2.  The Debtor believes that the Plan satisfies the requirements of 11 U.S.C. §1129(a)(ii) of the Code and that the Disclosure Statement and its Exhibits demonstrate that Confirmation of the Plan is not likely to be followed by the liquidation of or need for further reorganization of the Reorganized Debtor.

B- CONFIRMATION OVER DISSENTING CLASS

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, so long as at least one impaired class of claims has accepted it.  These ""cram-down"" provisions for confirmation of a plan, despite the non-acceptance of one or more impaired classes of claims or interests, are set forth in 11 U.S.C. §1129(b) of the Bankruptcy Code.

If a Class of secured Claims rejects the Plan, the Plan may still be confirmed so long as the Plan does not discriminate unfairly as to a Class and is "fair and equitable" to such

Class under 11 U.S.C. §1129 (b) of the Bankruptcy Code and applicable case law. 11 U.S.C. Section 1129 (b) of the Bankruptcy Code states that the "fair and equitable standard may require, among other things, that the Plan provide (i) that the lien securing the Claims of members of the Class is to be left in place and the holders of the Claim will receive deferred cash payments of a present value equal to the lesser of the amount of such Claims or the value of the collateral securing such Claims; (ii) that the collateral securing the Claims be sold free of the lien with the lien attaching to the proceeds and with the lien on the proceeds being treated under one of the two other standards described in this paragraph; or (iii) a treatment for the Claim that is the "indubitable equivalent" of the Claim. The Debtor believe that the Plan satisfies the test and therefore that the Plan can be confirmed even if it is rejected by holders of Secured Claims. If a Class of unsecured Claims rejects the Plan, the Plan may still be confirmed so long as the Plan is not unfairly discriminatory as to that Class and is "fair and equitable" to such Class. Under 11 U.S.C. §1129 (b) of the Bankruptcy Code, a Plan is "fair and equitable" as to a class if, among other things, the Plan provides that (i) each holder of a Claim included in the rejecting class receive or retain on account of that Claim property which has a value, as of the Effective Date, equal to the allowed amount of such Claim; or that (ii) the holder of any Claim or interest that is junior to the Claim of such Class will not receive or retain on account of such junior Claim or interest any property at all; or (iii) although not included in 11 U.S.C. §1129 (b) but as determined by case law that if a junior Claim receives or retains anything on account, even though the senior holder has not received a one hundred percent (100%) return, that a substantial new contribution, as determined by the Court, shall be made by the junior Claimant. The Debtor believe that the Plan meets this test as to all impaired Classes of unsecured Claims. Therefore the Debtor believes the Plan could be confirmed even if it is rejected by the Classes of unsecured Claims as long as at least one impaired Class accepts the Plan.

With respect to a Class of interests, such interest holders may not receive any distribution or retain any value on account of such interests unless all Classes of creditors have been paid in full or that a substantial new contribution, as determined by the Court, shall be made by any interest holder retaining any distribution or value on account of such interests in

the event all classes of creditors have not been paid in full.  This is not applicable in this Case since all Approved Claims will be paid in full.

## C – CLOSING OF CASE

Until this case is officially closed, the Reorganized Debtor will be responsible for filing pre and post-confirmation reports required by the United States Trustee and paying the quarterly post-confirmation fees of the United States Trustee, in cash, pursuant to 28 U.S.C. §1930, as amended.  Pursuant to 11 U.S.C. §1129(a)(12), all fees payable under section 1930 of title 28, as determined by the Court at the hearing on confirmation of the Plan, will be paid in cash, on the Effective Date.

## D – NONALLOWANCE OF PENALTIES AND FINES

No distribution shall be made under this Plan on account of, and no other Allowed Claim, whether secured, unsecured, administrative, or priority, shall include any fine, penalty, exemplary or punitive damages, late charges, default interest or other monetary charges relating to or arising from any default or breach by the Debtor, and any Claim on account thereof shall be deemed disallowed, whether or not an objection was filed to it.

## E – EFFECT OF CONFIRMATION

Because the Debtor is an individual, pursuant to §1141(d)(5) of the Bankruptcy Code, Confirmation of the Plan does not provide the discharge for the Debtor.  The Debtor will move for the entry of a final decree after the Debtor have provided for the implementation of the Plan, and the final decree will contain the language providing the Debtor their discharge and such final decree will discharge any and all debts of the Debtor, that arose any time before the entry of the Confirmation Order, including, but not limited to, all principal and all interest accrued thereon, pursuant to §1141(d) of the Bankruptcy Code.  The discharge shall be effective as to each Claim, regardless of whether a proof of claim thereon was filed, whether the Claim is an Allowed Claim or whether the holder thereof votes to accept the Plan.

In addition, any pre-confirmation obligations of the Debtor dealt with in this Plan shall be considered New Obligations of the Debtor, and these New Obligations shall not be

considered in default unless and until the Reorganized Debtor default on the New Obligations pursuant to the terms of the Plan. The New Obligations provided for in the Plan shall be in the place of, and completely substitute for, any pre-Confirmation obligations of the Debtor and, once the Plan is confirmed, the only obligations of the Debtor shall be such New Obligations as provided for under the Plan.

## ARTICLE XIII
### JURISDICTION OF THE COURT

1.	<u>Reinvestment of Title and Retention of Jurisdiction</u>: On Confirmation, the Debtor shall be reinvested with their assets, subject only to the terms of the Plan and the liens of the Secured Creditors described herein. The Debtor shall be entitled to manage their affairs, subject to the limitations set forth herein, without further order of the Court. Subject to such limitations, the Court will retain jurisdiction until the Plan has been fully consummated for certain purposes, including, but not limited to:

2.	<u>The Classification of a Claim of any Creditor, the re-examination of any Claim which has been allowed for the purposes of voting and the determination of such objections as may be filed to any Claim</u>: The failure by the Debtor to object to or to examine any Claim for the purposes of voting, shall not be deemed a waiver of the Debtor' right to object to or reexamine the Claim in whole or in part. If a Creditor does not file a Claim in these proceedings, the Debtor may object to the amount scheduled as owing to that Creditor, in whole or in part. If any objection to a Claim is filed, no payment will be made with respect to such Claim until a determination on such objection has been made by the Court.

3.	<u>Disputed Claims; Objections to Claims</u>: Any party in interest may file an objection to any claim within ninety (90) days from the Effective Date. Objections not filed within such time shall be deemed waived.

If any Claim or any portion thereof is challenged by objection, the Debtor shall segregate and set aside funds, consistent with the Plan, sufficient to satisfy the Claim as filed, or as scheduled by the Debtor. When an objection to a Claim has been resolved, distribution shall be made accordingly.

49

4. <u>Title to and Liens Against Assets</u>: Determination of all questions and disputes regarding title to and liens on the assets of the Debtor and determination of all causes of action, controversies, disputes or conflicts whether or not subject to an action pending as of the date of Confirmation, between the Debtor and any other party, including, but not limited to, the right of the Debtor to recover assets pursuant to the provisions of the Code.

5. <u>Correction of Defects</u>: Correction of any defect, the curing of any omission or the reconciliation of any inconsistency in the Plan or in the Confirmation as may be necessary to carry out the purposes and intent of the Plan.

6. <u>Modification</u>:  After Confirmation, the Debtor may, with the approval of the Court, and so long as it does not materially or adversely affect the interest of Creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the Confirmation in such manner as may be necessary to carry out the purposes and effect of the Plan.

7. <u>Enforcement</u>:  To enforce and interpret the terms and conditions of the Plan.

8. <u>Further Orders</u>: Entry of any order, including injunctions, necessary to enforce the title, rights and powers of the Debtor and to impose such limitations, restrictions, terms and conditions of such title, rights and powers as the Court may deem necessary.

9. <u>Conclusion</u>:    Entry of an order concluding and terminating this case.

**RESPECTFULLY SUBMITTED** this 13th day of August, 2015.

THE LAW OFFICE OF ADAM HAUF

/s/ Adam E. Hauf
Adam E. Hauf
Attorney for Debtor

Original filed this 13th
day of August, 2015

By: /s/ Deanna Cresta __
    Deanna Cresta